UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETH HAGER,

      Plaintiff,

v.

ROBERT C. STEINERT,
d/b/a AMERICAN CREDIT RECOVERY
and d/b/a DEBT BILLING RECOVERY,

      Defendant.
_____/

COMPLAINT

**I.    Introduction**

1.    This is an action for damages brought against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.*

2.    Defendant, along with other entities and individuals to be identified in discovery, are involved in a fraudulent, criminal and ongoing scheme whereby they have conspired to use false representations and threats to coerce the payment of money from consumers across the country who allegedly have failed to repay payday loans.  This scheme, operated by defendant as well as many other entities located in and around Buffalo, New York, Atlanta, Georgia and Charlotte, North Carolina, is based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that includes variations of the following:  The caller calls from a blocked

number or uses a telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer.  The caller suggests that criminal charges might not be pursued if the consumer calls returns the call in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm).  Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response.  When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt.  Of course, no lawsuit has been filed.  Often times the debt is time-barred.  Often times, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account.  Often times, the loan has been repaid and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.    The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122,

by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants.  See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a payday loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants a alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing extortionate scam.

4.      On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

5.      Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan

Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft.

## II.    Jurisdiction

6.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place here.

## III.    Parties

7.    Plaintiff Beth Hager is an adult, natural person residing in Kent County, Michigan.  Ms. Hager is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Ms. Hager is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

8.    Defendant Robert C. Steinert is a natural person, age 44, purportedly residing at 6213 Old Lake Shore Road, Lake View, New York 14085-9548. Mr. Steinert uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Steinert regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Steinert is a "debt collector" as the term is defined and used in the FDCPA.  Mr. Steinert is a "regulated person" as the term is defined and used in the MCPA.  Alternatively, Mr. Steinert is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

9.    On February 17, 2015, Robert C. Steinert, 6213 Old Lake Shore Road, Lake View, New York 14085, company telephone number 716-627-3620, filed an assumed name

certificate (File No. 2015030321) with the County Clerk for Erie County, New York, registering the assumed name of Debt Billing Recovery.

10. On February 24, 2015, Robert C. Steinert, 6213 Old Lake Shore Road, Lake View, New York 14085, company telephone number 716-627-3620, filed an assumed name certificate (File No. 2015034821) with the County Clerk for Erie County, New York, registering the assumed name of American Credit Recovery.

11. On April 22, 2015, the internet domain name www.americancreditrecovery.com was registered through GoDaddy.com, LLC by Robert Steinert, 6213 Old Lake Shore Road, Lake View, New York 14085, telephone number 716-627-3620, and email address robertsteinert9@gmail.com. The domain name links to an internet website for American Credit Recovery, P.O. Box 76, Lake View, New York 14085, telephone number 844-382-4648. The website states: "American Credit Recovery. New York's Trusted Name In Credit Recovery. Being in debt can create a burden on anyone. American Credit Recovery is determined to help our customer's financial situations with the best possible solutions."

12. The telephone number listed on the American Credit Recovery internet website, 844-382-4648, belongs to Vonage Business Solutions. According to Vonage, beginning February 21, 2015, Robert Steinert, 6213 Old Lake Shore Road, Lake View, New York 14085, doing business as American Credit Recovery, became the subscriber to Vonage Account Number 101724, which includes telephone number 844-382-4648. According to Vonage, Mr. Steinert's account also includes Vonage telephone number 716-980-4125. Vonage business records regarding Ms. Steinert's account are attached hereto as Exhibit A.

13. Mr. Steinert in his unlawful debt collection scam has used other telephone numbers that he has obtained through Verizon. The subscriber to one of those telephone

numbers, 716-627-3620, is Mr. Steinert's brother, non-party Christopher M. Steinert, age 27. The subscriber to another of those telephone numbers, 716-374-0139, appears to be Mr. Steinert, but the number currently is being used by Mr. Steinert's brother, non-party Henry J. Steinert, age 24.

14.     Mr. Steinert and his employees and agents when carrying out Mr. Steinert's unlawful debt collection scheme frequently use the unregistered name of "ACR" in order to conceal their true.

15.     Mr. Steinert (a) created the collection policies and procedures used by himself and any of his employees and agents, (b) managed the daily collection operations of "ACR," (c) oversaw the application of the collection policies and procedures used by himself and any of his employees and agents, (d) ratified the unlawful debt collection policies and procedures used by himself and any of his employees and agents, and (e) had knowledge of, approved and ratified the unlawful debt collection practices used by himself and any of his employees and agents in connection with their efforts to collect an alleged debt from Ms. Hager and others using the unlawful debt collection practices that are described in this complaint.

16.     Mr. Steinert directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Hager that are described in this complaint.

17.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf.  *See, e.g., Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 404 (3rd Cir. 2000).

18.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts,

materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

IV.    **Facts**

19.    Plaintiff Beth Hager allegedly borrowed several hundred dollars via the internet by what is commonly referred to as a payday loan, at an annualized interest rate that exceeded 300 percent. Any money borrowed by Ms. Hager was used by Ms. Hager for personal, family and household purposes. Any resulting obligation of Ms. Hager to repay money was a "debt" as the term is defined and used in the FDCPA, MRCPA and MCPA.

20.    Defendant Robert C. Steinert claimed that Ms. Hager failed to repay the loan.

21.    Ms. Hager denies owing any money to defendant or anyone else in connection with the alleged loan.

22.    Ms. Hager refuses to pay any money to defendant or anyone else in connection with the alleged loan.

23.    Defendant somehow stole Ms. Hager's personal and financial information. Alternatively, defendant somehow acquired Ms. Hager's stolen personal and financial information.

24.    On or about April 1, 2015, defendant or his employee or agent placed a call to Ms.

7

Hager's cellular telephone in connection with defendant's efforts to collect the alleged debt and spoke with Ms. Hager. In the ensuing conversation, defendant or his employee or agent made the following representations to Ms. Hager:

    a)    Ms. Hager owed money for an allegedly delinquent payday loan.

    b)    Two charges had been filed against Ms. Hager, one for breach of contract and the other for malicious intent to defraud a financial institution.

    c)    Defendant or his employee or agent was coming that night to Ms. Hager's residence to serve her with a subpoena to appear in court to answer to the charges filed against her.

    d)    If Ms. Hager wished to avoid being served with the subpoena, she would need to call "ACR" at 844-382-4648.

25.    Every one of the above-described threats and representations made by defendant or his employee or agent were false and part of a scripted and unlawful debt collection practice that was perpetrated by defendant to coerce the payment of money from consumers through the use of false threats, intimidation, criminal extortion, and unlawful harassment of the consumers and their relatives and other third parties. Discovery is expected to disclose that defendant and his employees, agents and affiliated entities have coerced the payment of thousands of dollars from hundreds of consumers using the same unlawful tactics that are described in this complaint.

26.    Defendant and his employees and agents failed to meaningfully identify themselves and the their companies.

27.    Defendant and his employees and agents falsely represented and falsely implied that there were legal claims pending against Ms. Hager.

28.     Defendant and his employees and agents falsely represented and falsely implied that criminal charges were pending against Ms. Hager.

29.     Defendant and his employees and agents falsely represented and falsely implied that a lawsuit had been filed or would be filed against Ms. Hager to collect the alleged debt.

30.     Defendant and his employees and agents falsely represented and falsely implied that Ms. Hager was going to be served with a subpoena to appear in court.

31.     Defendant and his employees and agents falsely represented that Ms. Hager owed a debt that she did not owe.

32.     Defendant and his employees and agents falsely represented and falsely implied that Ms. Hager had committed a crime.

33.     Defendant and his employees and agents falsely represented and falsely implied that there were criminal charges pending against Ms. Hager, one for breach of contract and another for fraud.

34.     Defendant did not intend to file a lawsuit against Ms. Hager in any Michigan court in efforts to collect the alleged debt.

35.     Defendant has never filed any lawsuit in any Michigan court to collect any debt from any person.

36.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

37.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

38.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

39.     The FDCPA states that it is unlawful for a debt collector to make any false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

40.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

41.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

42.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

43.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

44.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

45.     The FDCPA states that it is unlawful for a debt collector to falsely represent or

imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

46.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

47.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

48.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

49.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

50.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

51.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

52.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

11

53.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

54.    The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

55.    Defendant and his employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

56.    Defendant and his employees and agents falsely accused Ms. Hager of committing a crime.  Ms. Hager did not commit a crime under Michigan law because the Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's check is dishonored."  M.C.L. § 487.2158(4).

57.    Morever, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . .  with intent to extort money or any pecuniary advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is not made.  *People v. Maranian*, 359 Mich. 361 (1960).

58.    Defendant and his employees and agents failed to timely send to Ms. Hager a

notice containing the information required by 15 U.S.C. § 1692g(a).

59.     Defendant and his employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

60.     Defendant and his employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

61.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

62.     Defendant and his employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

63.     As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

**V.    Claims for Relief**

### Count 1 – Fair Debt Collection Practices Act

64.    Plaintiff incorporates the foregoing paragraphs by reference.

65.    Defendant has violated the FDCPA.  Defendant's violations of the FDCPA

include, but are not necessarily limited to, the following:

a)    Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural

consequence of which is to harass, oppress, or abuse a person in connection with

the collection of a debt;

b)    Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading

representations and means in connection with the collection or attempted

collection of a debt;

c)    Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means

to collect or attempt to collect a debt from plaintiff; and

d)    Defendant violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)    Such further relief as the court deems just and proper.

### Count 2 – Michigan Regulation of Collection Practices Act

66.    Plaintiff incorporates the foregoing paragraphs by reference.

67.    Defendant has violated the MRCPA.  Defendant's violations of the MRCPA

14

include, but are not necessarily limited to, the following:

a)   Defendant violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)   Defendant violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)   Defendant violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)   Defendant violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)   Defendant violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)   Defendant violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g)   Defendant violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)   Actual damages pursuant to M.C.L. § 445.257(2);

b)   Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)   Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 3 – Michigan Occupational Code

68.     Plaintiff incorporates the foregoing paragraphs by reference.

69.     Defendant has violated the MOC.  Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendant violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendant violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendant violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)      Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure

designed to prevent a violation by an employee; and

h)      Defendant violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: March 22, 2016                  /s/ Phillip C. Rogers
                                       Phillip C. Rogers (P34356)
                                       Attorney for Plaintiff
                                       40 Pearl Street, N.W., Suite 336
                                       Grand Rapids, Michigan 49503-3026
                                       (616) 776-1176
                                       ConsumerLawyer@aol.com